UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ASIEL GONZALEZ HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>BRUCE SCOTT, et al.,<br><br>Respondents. | Case No. 2:26-cv-02991-TMC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Asiel Gonzalez Hernandez is a 37-year-old citizen of Cuba who is detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. He petitions the Court under 28 U.S.C. § 2241 for relief from physical custody. For the reasons stated below, the Court DENIES the Petition.

## I. BACKGROUND

Petitioner arrived in the United States in May 2019 and was paroled into the country. Dkt. 1 at 1; Dkt. 6 ¶¶ 5, 8. In September 2020, U.S. Citizenship and Immigration Services approved Petitioner's application for lawful permanent resident ("LPR") status pursuant to the Cuban Adjustment Act. Dkt. 6 ¶ 9. In March 2021, the Palm Beach County Sheriff's Office arrested Petitioner on the charges of "Unlawful Possession of Personal ID Information" and "Use

of Scanning or Skimming Device." *Id.* ¶ 11. He pled guilty to these charges in May 2022 and was ordered to serve one day in jail, 24 months on probation, and pay the victims over $5,000 in restitution. *Id.*

On July 19, 2026, officers of the Customs and Border Patrol ("CBP") encountered Petitioner when he arrived at the Miami International Airport, returning to the U.S. on a flight from Cuba. *Id.* ¶ 12. CBP officers determined that Petitioner's 2022 convictions were crimes involving moral turpitude and placed Petitioner into custody. *Id.* He was transferred to NWIPC on July 28, where he remains detained. *Id.* ¶ 14. Immigration and Customs Enforcement ("ICE") has placed Petitioner in removal proceedings and he awaits a hearing before an Immigration Judge ("IJ") who will make an independent determination of whether Petitioner's criminal convictions involve moral turpitude. *Id.* ¶¶ 13, 15.

On August 25, Petitioner filed this petition for a writ of habeas corpus. Dkt. 1. On September 8, Respondents filed their response. Dkt. 5. On September 14, Petitioner filed his traverse (Dkt. 8) and the matter is now ready for review.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by the preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III. DISCUSSION

Petitioner argues that his due process rights were violated "when Respondents arrested and detained him . . . without first making an individualized determination that detention, rather than continued community supervision or other less restrictive alternatives, was necessary."

Dkt. 1 at 8. Respondents reply that although Petitioner is an LPR, he "became an inadmissible arriving alien when he sought admission to the United States because of his criminal convictions." Dkt. 5 at 3. The Court need not address these arguments in depth because the outcome of this habeas petition is controlled by a recent decision from the Supreme Court, though that decision is not addressed by either party.

Towards the end of its term, the Court decided *Blanche v. Lau*, 609 U.S. __, 146 S. Ct. 1981 (June 23, 2026), which addressed the burden of proof the government bears under the Immigration and Nationality Act ("INA") when a CBP official determines the status an LPR returning from a trip abroad. Under the INA, an LPR must generally be regarded as already admitted to the country and usually does not have to reapply for admission when they return from overseas. *See* 8 U.S.C. § 1101(a)(13)(C). But there are certain exceptions, one of which is if the LPR has committed a crime involving moral turpitude. *See* §§ 1101(a)(13)(C)(v); 1182(a)(2)(A)(i)(I). If an LPR falls into one of the exceptions, he is treated as an arriving noncitizen "seeking an admission" and not as one already admitted. This distinction "comes with significant deprivations." *Lau*, 146 S. Ct. at 1994 (Jackson, J., dissenting). As an LPR, Lau typically would have entered the country in a manner similar to a citizen. But once he was deemed to be "seeking an admission," he could "be turned away, *detained*, or conditionally let back into the country on parole. § 1182(d)(5)(A)." *Id.* at 1991 (Jackson, J., dissenting) (emphasis added). The Court in *Lau* decided that the INA imposed no specific burden of proof on a CBP officer when making this important decision. *Id*. at 1986, 1990; *see also id.* at 1989 ("We decline to read into the INA an additional clear-and-convincing-evidence burden on border officers entrusted with making quick judgments on the spot . . .") (citation modified).

The petitioner in *Lau* was a Chinese citizen who gained LPR status in the United States in 2007. *Id*. at 1986. Five years later, he was charged in state court with counterfeiting. While

awaiting trial, he traveled to China. *Id*. At J.F.K. International Airport upon his return, a CBP officer learned of Lau's pending criminal case and, based on that, "did not regard Lau as already admitted, but instead as an applicant seeking admission." *Id.* at 1987. In Lau's case, the officer exercised their authority "to parole Lau pending the resolution of his criminal case." *Id.* "Parole thus allows the Government to pause the inspection at the border and defer it to a later time without having to detain the alien pending a final admissibility decision, as would otherwise be required." *Id.* (citing 8 U.S.C. §§ 1225(a), (b)(2)(A)).

Petitioner here is not so fortunate. Rather than parole him into the country pending his removal proceedings, the CBP officer who encountered Petitioner treated him as seeking admission and decided that he should be detained. Petitioner's arguments in his reply brief (Dkt. 8 at 4–5) that whether he committed a crime of moral turpitude is ultimately a "matter for the Immigration Judge" echo Justice Jackson's dissent: "[T]oday the Court allows the Government to deem an LPR to be 'seeking an admission' first and justify the applicability of an exception later . . . ." *Id.* at 1991. But the majority in *Lau* plainly upheld the Government's power to treat an LPR in Petitioner's circumstances as an arriving noncitizen who is "seeking an admission" and thus subject to mandatory detention pending removal proceedings.

## IV. CONCLUSION

1. For the reasons explained above, the petition for a writ of habeas corpus (Dkt. 1) is DENIED.

Dated this 22nd day of September, 2026.

Tiffany M. Cartwright
United States District Judge